**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Edward COBB,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald Bradley HATCHER,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Howard Steven SEARS,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Larry Dale KEATON,**
**Defendant–Appellant.**

Nos. 89–5628, 89–5630, 89–5631 and 89–5636.

United States Court of Appeals, Fourth Circuit.

Argued March 9, 1990.

Decided June 12, 1990.

Hunt Lee Charach, Acting Federal Public Defender, Charleston, W.Va., for defendants-appellants.

Linda Frances Thome, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Mark D. Moreland, South Charleston, W.Va., Robert B. Allen, Charleston, W.Va., Kevin B. Burgess, Oak Hill, W.Va., on the brief, for defendants-appellants.

James P. Turner, Acting Asst. Atty. Gen., Jessica Dunsay Silver, U.S. Dept. of Justice, Washington, D.C., Michael W. Carey, U.S. Atty., Charleston, W.Va., on the brief, for plaintiff-appellee.

Before ERVIN, Chief Judge, and HALL and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Thomas Edward Cobb, Ronald Bradley Hatcher, Howard Steven Sears, and Larry Dale Keaton, all former law enforcement officers, appeal from their convictions for depriving Kenneth Wayne Pack of his civil rights by wilfully subjecting him to an excessive use of force, in violation of 18 U.S.C. § 242; and for obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3). Keaton also appeals from a separate conviction for witness tampering, in violation of 18 U.S.C. § 1512(b)(3). We affirm the convictions of appellants Hatcher, Sears, and Keaton. However, finding that the trial court denied appellant Cobb his Sixth Amendment right to counsel, we reverse his convictions.

I.

In early 1987, Keaton was the Chief of Police for the City of Hinton, located in Summers County, West Virginia. Cobb was a city patrolman. Hatcher was the Chief Deputy Sheriff of Summers County, and Sears was a deputy sheriff.

On the night of April 24, 1987, Sears, Keaton, and Hatcher arrested Pack for public intoxication outside the Wagon Wheel, a bar in Hinton. Pack was handcuffed and transported to City Hall. Once there, the officers escorted him to a holding area, known as the "booking room," where they were met by Officer Cobb. Pack and the officers exchanged insults and a heated argument ensued. Keaton struck Pack on the head with a slapjack, knocking him to the floor. The officers then proceeded to beat Pack for almost two hours, insulting and ridiculing him the entire time. Pack remained handcuffed throughout the attack. At no point did he attempt to strike any of the officers.[1]

1. Appellants testified to an entirely different rendition of the events in the booking room.

While Pack was in the booking room, each of the four officers executed affidavits swearing that Pack had assaulted him. Keaton also intimidated John Plumley, a part-time police dispatcher who witnessed the beating, into signing a similar affidavit. Later that evening, arrest warrants based on the affidavits, as well as on a charge of public intoxication, were issued by a city judge and immediately served on Pack.[2]

Just before midnight, Keaton and Hatcher took Pack to the hospital for treatment of the injuries he sustained in the beating: a hematoma on the left frontal skull, swelling of the area surrounding the left eye, and a lip so severely lacerated that it required reconstructive surgery. Pack was kept overnight for observation. He was released the next day.

On the basis of this incident, appellants were named in a six-count indictment issued on August 17, 1988. Count I of the indictment charged appellants with violating 18 U.S.C. §§ 242, 2 by wilfully, and under color of state law, depriving Pack of his "right secured and protected by the Constitution and laws of the United States of America not to be deprived of liberty without due process of law, which includes the right not to be subjected to unnecessary and excessive force." Count II charged appellants with forming a conspiracy to violate 18 U.S.C. § 1512, by concocting a false story to cover up the assault on Pack, and Count III charged Keaton, Sears, and Cobb with a substantive violation of § 1512(b)(3) for the intimidation of Plumley. Similarly, Count IV charged appellants with another violation of § 1512(b)(3) for signing false assault warrants before the city judge.[3]

On March 7, 1989, appellants' trial commenced. At the close of the government's evidence, the district court granted all of the appellants' motions for acquittal on Count II as well as appellants Cobb's and Sears' motions for acquittal on Count III.

Each officer elected to testify in his own defense. Officer Cobb concluded his direct examination in the middle of the afternoon on Friday, March 17, 1989. The trial court directed the government to promptly begin its cross-examination. At approximately 4:45 p.m., the court announced its weekend recess, which was to last until 1:30 p.m. the following Monday afternoon. At that point, the government requested the trial court to order Cobb not to discuss his ongoing testimony with anyone, including his attorney, during the weekend recess. The district court granted the motion. Cobb immediately objected to the order, arguing that the restriction deprived him of his Sixth Amendment right to counsel. The objection was overruled. To comply with this order, Cobb did not speak with his attorney at all over the weekend.

At the end of trial, appellants were convicted on all remaining counts. On June 23, 1989, Cobb and Sears were sentenced to one year on Count I and a consecutive two-year period of probation on Count IV. Hatcher received one year on Count I, a consecutive six-month suspended sentence on Count IV, and three years probation. On July 7, 1989, Keaton was sentenced to one year on Count I, a consecutive one-year sentence on Count III, and four years probation on Count IV. These appeals followed.[4]

## II.

Before this Court, appellants raise several arguments. First, and most forcefully,

They did not deny that force was used against Pack, but instead maintained that the force used was necessary under the circumstances. Importantly, they asserted that Pack initiated the physical altercation. The jury's finding of guilt, of course, belies their version of the events.

2. Pack was never tried on any of the assault charges.

3. Counts V and VI of the indictment were severed prior to trial. After appellants' convictions, they were dismissed by the government.

4. On August 9, 1989, acting as a single circuit judge, I granted Cobb's motion for bond pending appeal, finding under 18 U.S.C. § 3143(b) that his Sixth Amendment claim, discussed in Section IV, *infra*, raised a substantial question of law likely to result in the reversal of his conviction. On that same date, I denied a similar motion, raising other issues, filed by Sears. On December 18, 1989, I denied another bond motion of Sears, as well as bond motions by Hatcher and Keaton.

they attack the district court's excessive force instruction on the 18 U.S.C. § 242 counts. Second, appellants argue that their obstruction of justice convictions must be reversed because Counts III and IV of the indictment failed to set forth all essential elements of the underlying § 242 violations. Lastly, appellant Cobb contends that the trial court's March 17, 1989, order, forbidding him to discuss his ongoing cross-examination testimony with his attorney, effectively denied him his Sixth Amendment right to counsel. We address these issues in turn.[5]

Section 242 of Title 18 of the United States Code makes it a misdemeanor for persons, acting under color of law, to deprive any inhabitant of any state, territory, or district "of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States...." Thus, to convict appellants, the government had to prove beyond a reasonable doubt that (1) appellants were acting under color of law; (2) Pack was an inhabitant of a state; (3) Pack was deprived of a right secured by the Constitution or laws of the United States; and (4) appellants' actions were wilful. *United States v. Senak*, 477 F.2d 304 (7th Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973), *citing United States v. Jackson*, 235 F.2d 925, 927 (8th Cir.1956). As alleged in the indictment, appellants deprived Pack "of liberty without due process of law, which includes the right not to be subjected to unnecessary and excessive force." Appellants' challenges to their convictions centers on the proper characterization of this right and is focused on the court's instruction on the last two elements of a § 242 violation.

As to element (3), the district court charged:

Third, that the conduct of the defendant deprived Kenneth Pack of his constitutional right not to be subjected to unreasonable and excessive force;....

In considering whether or not a defendant deprived Kenneth Pack of his constitutional right not to be subjected to unreasonable and excessive force, you should determine whether the force used by that defendant was necessary in the first place or was greater than the force that would appear reasonably necessary to an ordinary, reasonable, and prudent person.

A law enforcement officer is justified in the use of any force which he reasonably believes to be necessary to effect an arrest or hold someone in custody and of any force which he reasonably believes to be necessary to defend himself or another from bodily harm.

Provocation by mere insulting or threatening words will not excuse a physical assault by a law enforcement officer. Mere words, without more, do not constitute provocation or aggression on the part of the person saying those words. No law enforcement officer is entitled to use force against someone based on that person's verbal statements alone.

In determining whether the force used in this case was excessive or unwarranted, you should consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or mali-

---

5. We also have carefully reviewed Hatcher's claim that the trial court's denial of his severance motion was in error and Sears' claim that the government was estopped from submitting extrinsic evidence of a prior inconsistent statement made by him and that the admission of the evidence violated Fed.R.Evid. 608(b). We find both of these arguments meritless. As to Hatcher's contention, it is well settled that a motion to sever is "committed to the sound discretion of the district court," *United States v. Tedder*, 801 F.2d 1437, 1450 (4th Cir.1986), *cert.*

*denied*, 480 U.S. 938, 107 S.Ct. 1585, 94 L.Ed.2d 775 (1987), and we perceive no abuse of that discretion here. *See United States v. Whitehead*, 618 F.2d 523, 529 n. 11 (4th Cir.1980). As to Sears' argument, we find nothing in the government's conduct which would estop it from introducing the evidence, and we find no error on the part of the trial court in accepting it, for impeachment purposes, under Fed.R.Evid. 613(b). *See United States v. Daniele*, 886 F.2d 1046, 1052–53 (8th Cir.1989) (such evidence is admissible over a Rule 608(b) objection).

ciously and sadistically for the very purpose of causing harm.

As to element (4), the court instructed:

Fourth, that the defendant willfully and knowingly intended to subject Kenneth Pack to the deprivation of his constitutionally protected right. . . .

[The government] must show that a defendant had the specific intent to deprive Kenneth Pack of his right not to be subjected to unreasonable and excessive force. If you find that a defendant knew what he was doing and that he intended to do what he was doing, and if you find that he did violate a constitutional right, then you may conclude that the defendant acted with the specific intent to deprive the victim of that constitutional right.

Appellants' challenges to these instructions all begin from the same starting point: that a pretrial detainee's liberty interest, as measured by the Due Process Clause of the Fourteenth Amendment, is to be free from punishment. They contend this right can only be violated by those uses of force so excessive that they "shock the conscience." From this premise, appellants argue that the trial court's instruction was fatally flawed because it does not expressly state that the jury must find their use of force punitive, or find it so excessive as to "shock the conscience." They further contend that the instruction, taken as a whole, erroneously allows for conviction on a finding that the use of force was merely unreasonable, *i.e.*, a negligence standard, and not on the required finding of intent. Lastly, they argue that the court's admonition that words alone do not justify the use of physical force by an officer is a clear misstatement of the law. Although we

agree with appellants' premise, we ultimately find none of their arguments persuasive.

■ We begin our analysis where we must, "by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, — U.S. —, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).[6] As the *Graham* Court made clear, the key to this determination is Pack's status at the time of the use of force. Pack, as one lawfully arrested and being held prior to a formal adjudication of guilt, was a pretrial detainee. *See Martin v. Gentile*, 849 F.2d 863, 865–66 (4th Cir.1988); *Cooper v. Dyke*, 814 F.2d 941, 943–44 (4th Cir.1987). Thus, appellants' argument is correct insofar as it contends that Pack's liberty interest, as secured by the Due Process Clause of the Fourteenth Amendment, was to be free from "the use of excessive force that amounts to punishment."[7] *Graham*, 109 S.Ct. 1871 n. 10, *citing Bell v. Wolfish*, 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979); *see also Cooper*, 814 F.2d at 948; *Martin*, 849 F.2d at 870; *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Likewise, appellants are correct that it would have been appropriate for the trial court to have instructed the jury that, in this context, to have been excessive, the use of force must have been intended as punishment.

■ These conclusions, however, do not, as appellants contend, mean that the trial court's instruction constitutes reversible error. When confronted by a claim of an erroneous jury instruction, we do not conduct a search for technical error. Rather,

---

**6.** Because 18 U.S.C. § 242 is merely the criminal analog of 42 U.S.C. § 1983, and because Congress intended both statutes to apply similarly in similar situations, our civil precedents are equally persuasive in this criminal context. *See United States v. Bigham*, 812 F.2d 943, 948 (5th Cir.1987).

**7.** In contrast, if at the time of the beating Pack had been an arrestee, his constitutional protection would arise from the Fourth Amendment right to be free from unreasonable seizures; if he had been a convict, the Eighth Amendment's

safeguard against cruel and unusual punishment would have applied. *See Graham*, 109 S.Ct. at 1870–71.

The Supreme Court left unresolved in *Graham* whether and to what extent the protections of the Fourth Amendment may extend to pretrial detainees. *Id.* at 1871 n. 10. There is no need for us to reach this difficult question here. Appellants were indicted and convicted under the more rigorous due process standard of excessive force.

our inquiry is whether, taken as a whole, the instruction fairly states the controlling law. *Chavis v. Finnlines, Ltd., O/Y,* 576 F.2d 1072, 1076 (4th Cir.1978). We conclude that this instruction did.

■ As we stated in *Martin,* the punitive intent behind a defendant's use of force may be inferred when the force is "not reasonably related to a legitimate nonpunitive governmental objective." *Id.* at 870; *Bell,* 441 U.S. at 539, 99 S.Ct. at 1874 (if a condition of pretrial detention is not reasonably related to a legitimate goal, "a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted"). Thus, the task of this instruction was to convey to the jury that punitive intent on the part of defendants could be inferred from the circumstances of the assault. As we alluded above, while this message could certainly have been conveyed more aptly, we find that it was nonetheless adequately conveyed.

Although the words "shock the conscience" or "punitive/punishment" are not to be found in the instruction, the charge nonetheless informs the jury that criminal liability may be imposed only on a finding that excessive force was used with the requisite intent. The instruction on element (3) directs the jury's attention to the factors relevant in determining whether the force employed was punitive:

> In determining whether the force used in this case was excessive or unwarranted, you should consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

We have long endorsed this four-part test, which is taken from Judge Friendly's semi-

nal opinion in *Johnson, supra,* as an appropriate means for making the excessiveness finding. *See King v. Blankenship,* 636 F.2d 70, 73 (4th Cir.1980). It provides accurate and effective instruction for determining what uses of force are punitive in the pretrial detainee context. *See Brooks v. Pembroke City Jail,* 722 F.Supp. 1294, 1299–1300 (E.D.N.C.1989). Further, the instruction on element (4) expressly conditions guilt on a finding that the defendants "willfully and knowingly" acted with a "specific intent to deprive" Pack of his liberty interest.

Similarly, the instruction did not permit conviction on a finding that appellants negligently used excessive force on Pack. The instruction could not have been more emphatic that conviction was contingent upon a finding that appellants wilfully, knowingly, and intentionally assaulted Pack in contravention of his constitutional rights.[8]

■ Finally, we do not agree with appellants that mere words by a pretrial detainee can justify the use of physical force by a police officer. In support of this proposition, they rely entirely upon our vacated opinion in *Miller v. Leathers,* 885 F.2d 151 (4th Cir.), *reh'g granted by* 893 F.2d 57 (1989). However, even in *Leathers,* an Eighth Amendment cruel and unusual punishment case, we did not embrace such an extraordinary position: "[w]e do not adopt a rule that sufficient verbal provocation will permit a prison guard to avoid § 1983 liability for the use of wanton and malicious force." *Id.* at 154. Certainly, the constitutional protections extended to pretrial detainees, whom the due process clause protects from any punishment whatsoever, are at least as great. The trial court was entirely correct that words alone do not justify the excessive use of force against a pretrial detainee.

In sum, although we find this instruction far from perfect, it fairly stated the con-

---

8. Even if we were to consider the instructions ambiguous on this point, reversal would still be inappropriate. Only if there is a "reasonable likelihood," *i.e.,* more than a mere possibility, that the jury misconstrued the instruction is reversal appropriate. *Boyde v. California,* —— U.S. ——, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990). We do not perceive such a likelihood here.

trolling law. To pass appellate review, it need not do more.

## III.

In pertinent part, 18 U.S.C. § 1512 reads:

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

\* \* \* \* \* \*

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense ...

shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

Appellants' challenges to their convictions under this provision arise from the government's choice to indict them in Counts III and IV for obstructing the investigation of the "commission of a federal offense" and not just the "commission or possible commission of a Federal offense," as provided in the statute. They argue that this wording makes an actual violation of 18 U.S.C. § 242 an element of the § 1512(b)(3) offense. As such, they contend that, although Counts III and IV described the alleged § 242 violation in some detail,[9] the indictment was nonetheless deficient because it did not list every element of a § 242 offense. They also maintain that the trial court's instructions did not adequately reflect the fact that a § 242 conviction was a *sine qua non* of an obstruction conviction. We are not persuaded.

■ Section 1512(b)(3) makes criminal the knowing use or attempted use of corrupt means to hinder the communication of information "relating to the commission or *possible* commission of a Federal offense." (Emphasis added.) Thus, the plain language of the statute makes clear that, as a general rule, proof of an actual commission of a federal offense is not a necessary prerequisite to, or an essential element of, the crime of obstruction of justice. Even if, however, the awkward wording of appellants' indictment created such an extraordinary requirement here, an issue we need not decide, that requirement has been met.

As we have long recognized, the sufficiency of an indictment

should be determined by practical, as distinguished from purely technical, considerations. Does it, under all of the circumstances of the case, tell the defendant all that he needs to show for his defense, and does it so specify that with which he is charged that he will be in no danger of being a second time put in jeopardy? If so, it should be held good.

*United States v. Missler,* 414 F.2d 1293, 1297 (4th Cir.1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970), *quoting Martin v. United States,* 299 F. 287 (4th Cir.1925). The Supreme Court has phrased this two-prong test as

first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962) (citation and quotation omitted); *see also United States v. Hooker,* 841 F.2d 1225, 1227 (4th Cir.1988) (*en banc*); *United States v. Pupo,* 841 F.2d 1235, 1239 (4th Cir.) (*en banc*), *cert. denied,* 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988).

9. Both counts of the indictment stated that the obstruction of justice pertained to the investigation of:

a violation of Title 18, United States Code, Section 242, which was committed when each of the defendants, while acting under color of laws of the State of West Virginia, used excessive force against Kenneth Wayne Pack, while Kenneth Wayne Pack was handcuffed behind his back and was in the defendants' official custody, thereby depriving Kenneth Wayne Pack of his right under the Constitution and laws of the United States not to be deprived of liberty without due process of law.

Appellants' argument goes only to the first prong of this test and is essentially that the indictment is insufficient because, by omitting all of the elements of a § 242 offense, it did not contain all of the elements of a violation of § 1512. This argument proves too much. Even if proof of an actual violation of § 242 were an essential element of these obstruction crimes as charged, there would still be no need to allege with particularity all of the elements of the underlying offense. As commentators and courts alike have recognized in the analogous situation of indictments for conspiracies to commit a criminal act, there is simply no need to aver with technical precision all of the elements of the object of the conspiracy. M. Rhodes, 1 *Orfield's Criminal Procedure under the Federal Rules*, 2d Ed. § 7:108; *United States v. Perkins*, 748 F.2d 1519, 1525 (11th Cir.1984); *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir.1985); *United States v. Pheaster*, 544 F.2d 353, 360 (9th Cir.1976), *cert. denied sub nom. Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Fusaro*, 708 F.2d 17, 23 (1st Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir.1979). As the Supreme Court made clear in *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927), where conspiracy is the "gist of the crime" all that is necessary in the indictment is that the object of the conspiracy be set out "sufficient[ly] to identify the offense which the defendants conspired to commit."

This reasoning is directly applicable to appellants' argument. The gist of the crimes charged in Counts III and IV was obstruction of justice, not the underlying civil rights violation, and all of the elements of that crime were clearly set forth. Further, the § 242 violation was so fully and adequately explained that there was no chance that appellants were not sufficient-

ly apprised as to what acts the obstruction counts were aimed. Likewise, the indictment was more than adequate to inform them of the charges they would face at trial. In fact, appellants do not contend that the indictment in any way prejudiced their defense. And, as evidenced by appellants' convictions on Count I, the government did succeed in proving actual violations of § 242. Lastly, the trial court's instructions, as appellants requested, required that a finding of guilt on the § 1512(b)(3) count be conditioned on a finding of an actual § 242 violation arising from the beating of Pack. In short, Counts III and IV of the indictment adequately charged a violation of § 1512(b)(3) and the proof and jury instructions at trial conformed thereto.

### IV.

Appellant Cobb argues that the trial court's order prohibiting him from discussing his cross-examination testimony with his attorney during the weekend recess deprived him of his Sixth Amendment right to counsel. We agree.

In *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), the Supreme Court held that denying a defendant the right to consult with his attorney during an overnight recess [10] was *per se* reversible error. Cobb raised *Geders* in his objection to the trial court. The district court overruled the objection, reasoning that the Supreme Court's more recent decision in *Perry v. Leeke*, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), carved an exception to the *Geders* rule. We cannot read *Perry* so broadly.

In *Perry*, the Supreme Court upheld a trial court's refusal to allow a defendant to confer with his attorney during a 15–minute break in his cross-examination testimony. The court reasoned that, lest the truth-seeking function of a criminal trial be jeopardized, a trial court must have the

---

**10.** The facts of *Geders* are very similar to the circumstances of appellant Cobb. Geders had concluded his direct examination testimony at 4:55 p.m. and the court announced its nightly recess. The government moved the court to order Geders not to discuss the case with anyone, including his attorney, during the recess. The district court granted the motion. *Id.* 425 U.S. at 81–82, 96 S.Ct. at 1332–33.

discretion to bar such consultations to protect the integrity of an ongoing cross-examination. *Id.* 109 S.Ct. at 600–02. We agree that once a criminal defendant takes the witness stand, "basic fairness" demands that the veracity of his testimony be tested by the rigors of an unadulterated cross-examination. *Id.* at 601. However, as the *Perry* court noted, at some point these concerns must give way to the protections of the Sixth Amendment:

> The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess.

*Id.* 109 S.Ct. at 602. The reasoning of *Geders* is even more persuasive here, where the recess in question was not merely one night, but an entire weekend.

The government argues that the trial court's order left Cobb free to discuss with his attorney any matters not related to his ongoing cross-examination and, consequently, did not offend the rule of *Geders.* The government contends that the court's order thus struck a constitutional balance between the *Perry* Court's emphasis on the protection of the integrity of cross-examination and the *Geders* Court's concern that a defendant be given access to his attorney. We disagree.

To remove from Cobb the ability to discuss with his attorney any aspect of his ongoing testimony effectively eviscerated his ability to discuss and plan trial strategy. To hold otherwise would defy reason. How can competent counsel not take into consideration the testimony of his client in deciding how to try the rest of the case? We are not alone in reaching this conclusion.

In *Mudd v. United States,* 798 F.2d 1509 (D.C.Cir.1986), the trial court gave defense counsel an order identical to the one in issue here. In rejecting the government's argument, the court noted that "[w]hile many of the benefits of counsel outlined by *Geders* are not related to testimony *per se,* an order such as the one in this case can have a chilling effect on cautious attorneys, who might avoid giving advice on non-testimonial matters for fear of violating the court's directive." *Id.* at 1512. *See also United States v. Romano,* 736 F.2d 1432 (11th Cir.1984), *vacated in part on reh'g on other grounds,* 755 F.2d 1401 (1985). Similarly, the Supreme Court recognized the reality of the situation in both *Perry* [11] and *Geders.* [12] We have no difficulty in concluding that the trial court's order, although limited to discussions of Cobb's ongoing testimony, effectively denied him access to counsel. Accordingly, his convictions must be reversed.

## V.

In sum, we hold that the district court's excessive force instruction adequately stated the controlling law and thus provides no grounds for reversal of appellants' convictions under 18 U.S.C. § 242. Likewise, Counts III and IV of appellants' indictment properly charged a violation of 18 U.S.C. § 1512(b)(3) and the proof and jury instructions at trial conformed thereto. Therefore, the convictions of appellants Hatcher, Sears, and Keaton are affirmed. However, we reverse the convictions of appellant

---

11. [T]he fact that such discussions will inevitably include some consideration of the defendant's ongoing testimony does not compromise [the] right [to unrestricted access to counsel]. *Id.* 109 S.Ct. at 602.

12. To the extent that conflict remains between the defendant's right to consult with his attorney during a long overnight recess in the trial, and the prosecutor's desire to cross-examine the defendant without the intervention of counsel, with the risk of improper "coaching," the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel. *Id.* 425 U.S. at 91, 96 S.Ct. at 1337.

Cobb because of the denial of his Sixth Amendment right to counsel.

No. 89–5628 is *REVERSED;*

No. 89–5630 is *AFFIRMED;*

No. 89–5631 is *AFFIRMED;*

No. 89–5636 is *AFFIRMED.*