998 F.2d 1010
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejandro CAMACHO, Jr., Defendant-Appellant.
 No. 92-5709.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 11, 1993.
Decided: July 21, 1993.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Glenn Lowell Clayton, II, CLAYTON, WILCOX & VERGARA, for Appellant.
 John Thomas Martin, Assistant United States Attorney, for Appellee.
 Richard Cullen, United States Attorney, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and HAMILTON and LUTTIG, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Appellant Alejandro Camacho, Jr., was convicted by a jury of twelve counts of bank fraud and one count of bank embezzlement. He contends that the district court committed reversible error by misstating the alibi instruction during the jury charge and by denying his post-trial motions for judgment of acquittal and for new trial. We affirm.
 
 I.
 
 2
 Camacho worked in the Bank Card Security Department of the First American Bank on the eighth floor of its headquarters office in McLean, Virginia, during the period from April 24 through October 3, 1989. First American offered its customers the use of credit cards that could be used to withdraw cash from their accounts through Automatic Teller Machines ("ATMs"). In order to access an account, a customer needed to insert his card into an ATM and enter the Personal Identification Number ("PIN") corresponding to the card. For security reasons, First American mailed cards and PINs to customers in separate envelopes; neither were forwarded if the customer had moved. Undeliverable cards were returned to Bank Card Security, while undeliverable PINs were returned to the Customer Service Department, which was located on the same floor as Bank Card Security. Like other Bank Card Security employees, Camacho was assigned a computer terminal through which he could log in returned, lost, or stolen cards and access customer account information, and was given a secret password unique to himself that was necessary to access the computer system.[1] Camacho did not have access to customer PINs, however; that access was reserved to data entry personnel and the Customer Service manager.
 
 
 3
 Between April 24 and October 3, 1989, fourteen First American accounts experienced a total of 142 unauthorized withdrawals. J.A. at 57-76. The withdrawals, which amounted in sum to over $50,000, were made from First American ATMs in northern Virginia, none of which had surveillance cameras. The affected accounts were either new or their owners had recently changed address or lost their ATM card.[2]
 
 
 4
 In each case, First American computer records showed that someone logging on to the bank's computer system using Camacho's name and secret password, and usually working at the terminal assigned to appellant, had made at least one data inquiry concerning the affected account within one day of when the unauthorized withdrawals began. Id. at 57-76, 116-17. With only one exception, these inquiries all occurred at times when Camacho was working at the bank.[3] Id. at 55-56.
 
 
 5
 After these data inquiries, but before the unauthorized withdrawals began, twelve of the affected accounts were also subjected to computer inquiries made through the use of the name and secret password of an employee, usually data entry employees Gigy Kunnath or Kamal Rana, who had access to customer PINs. Although Camacho lacked access to PINs, Kunnath and Rana later testified that appellant frequently asked them to verify PINs for him, and they did so. Id. at 260-63, 270-72. Rana also testified that she once had changed a customer's PIN at Camacho's request and left a "free text message" in the customer's computer file to memorialize that Camacho had authorized the change. Id. at 125-27, 261-63. Computer records showed that one of the affected accounts had had such a message appended to its computer file on the same day that the customer's PIN was changed without his permission. Id. at 62. The next day, the free text message was deleted by someone using appellant's password, and eight unauthorized withdrawals thereafter were made from the account. Id. at 62, 128.
 
 
 6
 All of the 142 unauthorized withdrawals save one took place at times when Camacho was not on duty at the bank, the sole exception being a withdrawal made from an ATM located in the building where appellant worked. Id. at 141. No other employee in the Bank Card Security or Customer Service Departments had the same work schedule as Camacho.
 
 
 7
 On October 17, 1990, Camacho was indicted by a federal grand jury and charged with one count of bank embezzlement, in violation of 18 U.S.C. § 656, and fourteen counts of bank fraud, in violation of 18 U.S.C. § 1344, all stemming from the unauthorized ATM withdrawals made from the fourteen First American accounts. He was found guilty on all counts after a jury trial. This court vacated the convictions, however, holding that the trial court had abused its discretion by commencing trial in Camacho's absence, and remanded for a new trial. United States v. Camacho, 955 F.2d 950 (4th Cir. 1992).
 
 
 8
 At the second trial, the district court judge inadvertently misspoke as he instructed the jury regarding Camacho's alibi evidence, when he said the following:
 
 
 9
 [e]vidence has been introduced by the defendant tending to establish an alibi, which amounts to a denial that he was present at the time when or at the place where an alleged offense was committed ... [I]f after considering all of the evidence in the case, including the evidence of the alibi-as to the alibi, you have a reasonable doubt as to whether the defendant was present at the time and place as alleged, then you must not find him not guilty on that count.
 
 
 10
 J.A. at 82, 445 (emphasis added). At the conclusion of the court's jury charge a few minutes later, but before the jury had been released to begin its deliberations, defense counsel brought the misstatement to the court's attention. The district court immediately informed the jury of its mistake and correctly stated the alibi instruction as follows:
 
 
 11
 if after considering all the evidence in the case, including the evidence as to the alibi, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him. That is how it should read. I'm afraid I fixed it so it said you must find him guilty. I didn't mean to say that. I shouldn't have said that. That is not the law.
 
 
 12
 Id. at 451. The jury then retired to commence deliberations.
 
 
 13
 Camacho was found guilty on the embezzlement charge and twelve of the bank fraud counts. The jury was unable to reach a verdict on the remaining two fraud charges, which were then dismissed upon the government's motion. Camacho was sentenced to twenty-four months' imprisonment followed by a three-year term of supervised release on each of the thirteen convictions, the sentences to run concurrently. He appeals.
 
 II.
 A.
 
 14
 Camacho first contends that the district court's misstated alibi instruction was constitutionally infirm because it charged the jury to find appellant guilty if it had a reasonable doubt as to whether he was present at a crime scene at the time a charged offense occurred, and argues that this error was not rendered harmless by the court's subsequent statement of the correct legal standard. Since alibi evidence was central to Camacho's defense, appellant having presented such evidence covering eighty-two of the 142 fraudulent withdrawals outlined by the government,[4] Camacho asserts that the erroneous instruction constitutes reversible error even under the harmless error analysis set forth in Yates v. Evatt, 111 S. Ct. 1884 (1991) and Chapman v. California, 386 U.S. 18 (1967).
 
 
 15
 We disagree. The district court misspoke by inadvertently inserting an extra "not" into the alibi instruction. Out of context, this seemingly small misstatement could be significant, and had the court not corrected itself, we might be sympathetic to Camacho's arguments. As it was, however, appellant's counsel made the district court aware of its mistake within minutes of its commission, before the jury had left the courtroom to begin its deliberations. The court then gave the correct instruction, in the process drawing the jury's attention to the importance of the alibi defense. Once corrected, the district court's charge fairly stated the controlling law. Under these circumstances, it is difficult to maintain even that the instructions given by the court below, taken as a whole, were actually erroneous. See United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir. 1990), cert. denied, 498 U.S. 1049 (1991). To the extent that they were so, however, we hold that the error was harmless beyond a reasonable doubt under the standards enunciated in Yates and Chapman.
 
 B.
 
 16
 Camacho also contends that the district court erroneously denied his motions for judgment of acquittal and for new trial. He argues that insufficient evidence supported his convictions, or alternatively, that even if the jury's verdicts are sufficiently supported in an abstract sense, they go against the vast weight of the evidence, so that a new trial must be granted in order to serve the interests of justice. We find neither argument persuasive.
 
 
 17
 When reviewing a denial of a motion for judgment of acquittal, we inquire "whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982); United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). A motion for new trial should be granted only in those extremely unusual circumstances "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment," and we review a district court's denial of such a motion for an abuse of discretion. United States v. Arrington, 757 F.2d 1484, 1485-86 (4th Cir. 1985).
 
 
 18
 The evidence presented against Camacho on the thirteen offenses which he was convicted of committing was unquestionably sufficient to sustain the jury's verdicts and the judgment of the court below and to make the granting of a new trial inappropriate. Appellant concedes that the unauthorized withdrawals had to have been made by a First American employee, since only such employees could have had the necessary access to both the ATM cards and the PINs. Camacho had ready access to the cards at his job in the Bank Card Security Department. Trial testimony showed that appellant was able to obtain PINs through inquiries he made with data entry personnel Kunnath and Rana. Each of the affected accounts had experienced computer inquiries from someone using Camacho's name and secret password within one day of the beginning of the unauthorized withdrawals from that account. Only appellant had a work schedule over the entire span of time during which the withdrawals took place that made it possible for him to be at work when computer inquiries into the affected accounts were made, and away from work when the withdrawals occurred. Moreover, Rana testified that Camacho had instructed her to change the PIN on one of the affected accounts, ostensibly on the orders of the customer, but the customer never actually requested the change. The potentially incriminating free text message Rana had placed in the computer file to note this PIN change was deleted the next day by someone using Camacho's secret password, and the account thereafter suffered unauthorized withdrawals. Although Camacho did present alibi evidence, the reliability of his witnesses was drawn into question during cross-examination, and in any event, appellant could produce no alibi for sixty of the withdrawals.
 
 
 19
 The record amply demonstrates that, while the government's case against Camacho may have been largely circumstantial, it was also strong. Accordingly, the district court did not err in denying Camacho's motions for judgment of acquittal and for new trial.
 
 III.
 
 20
 For the foregoing reasons, Camacho's convictions are affirmed.
 
 AFFIRMED
 
 
 [1]
 Although employees were assigned particular computer terminals, they could log on to the system through any terminal by typing in their secret password. J.A. at 161
 
 
 [2]
 As discussed supra, ATM cards that were not deliverable by mail, or which were returned to First American for other reasons, were sent to Bank Card Security, where Camacho and his fellow employees had easy access to them. Id. at 101, 110
 
 
 [3]
 An inquiry on September 22, 1989, was made at a time when appellant's timesheet indicated that he was at lunch. Employees filled in their own timesheets, however, and could misstate the times when they actually were at work. Id. at 212-13
 
 
 [4]
 Through cross-examination, the government challenged this alibi evidence, most of which took the form of testimony from Camacho's mother, sister, and close friends