**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ROBERT LIONEL SISK,
*Defendant-Appellant.*

No. 02-4567

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

VENTURA GARCIA, a/k/a Chili,
*Defendant-Appellant.*

No. 02-4609

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ESTEBAN GARCIA, SR., a/k/a Esteban
Garcia-Olvera,
*Defendant-Appellant.*

No. 02-4697

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburg, District Judge.
(CR-01-52)

Argued: October 31, 2003

Decided: February 12, 2004

Before MICHAEL, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Aaron Edmund Michel, Charlotte, North Carolina; Richard Dwight Biggs, LAW OFFICE OF MARCIA G. SHEIN, P.C., Decatur, Georgia, for Appellants. Thomas Richard Ascik, Assistant United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Marcia G. Shein, LAW OFFICE OF MARCIA G. SHEIN, P.C., Decatur, Georgia, for Appellant Sisk; Stanford K. Clontz, STANFORD K. CLONTZ, P.A., Asheville, North Carolina, for Appellant Ventura Garcia. Robert J. Conrad, Jr., United States Attorney, Asheville, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Esteban Garcia, Sr., Ventura Garcia, and Robert Sisk were charged and convicted under 21 U.S.C. §§ 841 and 846, which make it unlawful to conspire to possess with intent to distribute five kilograms or more of cocaine *or* fifty grams or more of methamphetamine. Because the jury was instructed that it had to find the threshold amounts of both cocaine and methamphetamine, and the evidence only supported a finding of a threshold amount of methamphetamine, the defendants argue that their convictions must be reversed. We disagree because the statutory offense for which the defendants were charged only requires proof of a threshold amount of one of the enu-

merated drugs. We also reject other challenges by the defendants to their convictions and sentences. The convictions and sentences are therefore affirmed.

I.

This appeal arises out of an indictment that charged fourteen persons with conspiracy to possess with intent to distribute at least five kilograms of cocaine and at least fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Ten of those charged pled guilty, and one was convicted at a separate trial. The three defendants in this appeal, Esteban Garcia, Sr. (Esteban), Ventura "Chili" Garcia (Ventura), and Robert Sisk, were tried together.

The indictment alleged that the three defendants were part of a drug distribution conspiracy that operated in western North Carolina from around 1990 until 2000. Defendant Esteban Garcia owned and operated CNS Video, a known center of drug distribution activity, and undercover officers began visiting the store to purchase drugs. The officers made some purchases directly from Esteban and other purchases from Esteban's nephew, Antonio. Officers also purchased drugs from Esteban at his home. During one transaction Esteban told an undercover officer that he had fronted large quantities of drugs to two persons and that his supplier was going to kill them if they did not pay what was due.

Several of the coconspirators who had pled guilty testified for the government at trial. Tony Branch testified that his associate, Ricky Moore, had purchased five ounces of methamphetamine from Esteban at CNS Video. Branch also testified that he had purchased methamphetamine from Esteban on approximately 100 occasions in amounts ranging from three to ten ounces. On some of those occasions, Branch saw defendant Ventura Garcia, who was Esteban's brother, at CNS Video. Finally, Branch said that he had purchased methamphetamine from defendant Robert Sisk.

Randy Hodge testified that he had seen Regina Thompson pick up two ounces of methamphetamine from Esteban Garcia at CNS Video. Hodge also recounted several other occasions when he or Thompson had obtained methamphetamine or cocaine from Esteban. Finally,

Hodge said that he had been approached by Ventura Garcia, whom he referred to as "Chili," about a drug debt he (Hodge) owed to Esteban. J.A. 216. During that encounter, Ventura mentioned repeatedly that Thompson owed Esteban large amounts of money and that "they" were going to kill her if she did not pay her debts. J.A. 217-18.

Ricky Moore testified that he had purchased cocaine and methamphetamine from defendant Robert Sisk on multiple occasions. Moore had also seen Sisk purchase methamphetamine from a drug distributor named Tom Smith. During one such purchase, Sisk became angry over the price that Smith was charging for methamphetamine. Sisk said, "I know that you're getting it at the same place that I get mine. I know it's the same Mexicans." J.A. 472. Sisk also indicated that he was getting his drugs from "the video store." J.A. 472. On another occasion, Sisk told a second witness that he was getting his drugs from "the Mexicans," specifically mentioning "Chili" (Ventura Garcia). J.A. 479.

Several additional witnesses testified that they had purchased drugs from or had seen drugs in the possession of Esteban, Ventura, or Sisk. For example, James Heffernan purchased methamphetamine from Sisk once or twice a week and saw "large amounts" of methamphetamine and cocaine at Sisk's residence. J.A. 380-81. Bradley Mace bought "half an ounce to an ounce" of methamphetamine from Ventura Garcia on six to twelve occasions. J.A. 182-83. Jimmy Robinson saw Ventura with a package of methamphetamine "probably the size of a bible." J.A. 461. Larry Patterson bought an ounce of methamphetamine from Sisk each month for a period of two years and was asked by Ventura to help distribute drugs. During a visit to Esteban Garcia's residence, Tony Branch saw a chunk of methamphetamine the size of a "country ham." J.A. 330.

A number of witnesses saw the defendants sell or possess large quantities of methamphetamine. The total of the weights the witnesses attributed to the various methamphetamine sales comfortably exceeded the fifty-gram threshold charged in the indictment. There was considerably less evidence about cocaine quantities. There was specific testimony about the purchase or possession of about 1500 grams of cocaine, some 3500 grams less than the five kilograms charged in the indictment. To make up the additional 3500 grams of

cocaine, the government relied on the testimony of four witnesses who made general references to cocaine quantity. James Heffernan testified that he had seen defendant Sisk in possession of different amounts of cocaine, "sometimes large, sometimes small," J.A. 381; Eric Heffernan, the brother of James, purchased "some cocaine" from Sisk and recalled seeing "quantities of [cocaine and methamphetamine] . . . ounces and stuff . . . [packaged] in sandwich bags," J.A. 418, 420; Kaythe McCurry saw Sisk with "pockets full of [methamphetamine and cocaine]," J.A. 408-09; finally, Jimmy Robinson testified that he had done "maybe a little cocaine" with Esteban Garcia. J.A. 458.

The jury found Esteban, Ventura, and Sisk guilty after a two-day trial. The defendants appeal their convictions and sentences. They claim that (1) there was insufficient evidence to prove that the conspiracy involved five kilograms of cocaine; (2) there was insufficient evidence to prove a single conspiracy; (3) the district court erred in joining the three defendants for trial; and (4) the district court erred in its conspiracy instructions to the jury. Each defendant has also appealed his individual sentence. Robert Sisk appeals the district court's determination of the drug quantity used to set his base offense level and the court's refusal to grant a downward departure. Ventura Garcia appeals a two-level enhancement for possession of a dangerous weapon, and Esteban Garcia appeals a three-level enhancement for his role in the offense. Esteban further claims that he was denied effective assistance of counsel.

## II.

### A.

The district court erroneously charged the jury that the government had to prove the conspiracy involved at least five kilograms of cocaine *and* at least fifty grams of methamphetamine. The evidence easily supports a finding that the conspiracy involved at least fifty grams of methamphetamine. The defendants claim on appeal, however, that their convictions must be reversed because there was insufficient evidence to support the jury's finding that the conspiracy involved at least five kilograms of cocaine. As the factual statement in part I reveals, the evidence does not support a finding of five kilo-

grams of cocaine, but that does not translate into a reversal of the convictions. An examination of the crime charged in this case leads us to conclude that the government was only required to prove that the conspiracy involved five kilograms of cocaine *or* fifty grams of methamphetamine.

The defendants were indicted and convicted under provisions that forbid any person from conspiring to possess with intent to distribute five kilograms or more of cocaine *or* fifty grams or more of methamphetamine. *See* 21 U.S.C. § 841(a), (b); 21 U.S.C. § 846. The substantive provision, § 841, is worded in the disjunctive, but when, as here, a defendant is charged with possession with intent to distribute more than one illegal substance, the indictment must charge in the conjunctive to fully inform him of the acts charged. *See, e.g.*, *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001); *see also United States v. Klein*, 850 F.2d 404, 406 (8th Cir. 1988). Accordingly, the indictment here charged the defendants with conspiring to possess with intent to distribute at least five kilograms of cocaine *and* at least fifty grams of methamphetamine. As the Supreme Court has said, "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). *See also United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967). Normally, then, the sufficiency of the evidence as to methamphetamine quantity would support the convictions, notwithstanding the insufficiency of the evidence as to cocaine quantity.

However, the defendants contend that in this case the quantity of cocaine charged became an essential element of the crime as a result of an erroneous jury instruction. The district court instructed the jury that in order to convict the defendants, it had to find that the conspiracy involved five kilograms of cocaine *and* fifty grams of methamphetamine. According to the defendants, this erroneous instruction became the "law of the case" because the government did not lodge an objection. *See, e.g.*, *United States v. Romero*, 136 F.3d 1268, 1272 (10th Cir. 1998). Regardless of how this argument might be dealt with in certain other jurisdictions, our circuit precedent requires us, when reviewing the sufficiency of the evidence, to "compare the Government's evidence against the elements of the charged offense." *United*

*States v. Alvarez*, 351 F.3d 126, 130 (4th Cir. 2003). *See also United States v. Mackins*, 32 F.3d 134, 138 (4th Cir. 1994). The statutory offense charged requires a drug quantity and type element of either five kilograms of cocaine or fifty grams of methamphetamine. The indictment had to charge both drugs, but the guilty verdict stands if there is sufficient evidence to find either drug in the right quantity. Thus, because the methamphetamine quantity is sufficient, the argument about insufficient cocaine quantity is moot.

B.

The defendants further contend that there was insufficient evidence to support a finding that they were involved in a single conspiracy. A single drug conspiracy exists when there is an agreement to engage in one overall venture to deal in drugs. *United States v. Bowens*, 224 F.3d 302, 307 (4th Cir. 2000). In order to prove a conspiracy to possess drugs with the intent to distribute, the government must establish that: (1) an agreement to possess with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996). Once it has been shown that a conspiracy exists, the evidence need only establish a "slight connection" between the defendant and the conspiracy to support conviction. *Id.* at 861. Thus, a defendant may "properly be convicted of conspiracy without full knowledge of all of [the conspiracy's] details, but if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, it is sufficient to convict him of conspiracy, even though he had not participated before and even though he played only a minor part." *Id.* at 858.

The evidence was sufficient to establish that the defendants were part of a single conspiracy to distribute drugs. Esteban Garcia owned and operated CNS Video store. Various witnesses, including two undercover police officers, purchased drugs at that location from both Esteban and Antonio Garcia. During some of those purchases, Ventura Garcia was present at the video store. Esteban and Ventura also sold significant amounts of drugs out of their homes. One witness saw Esteban in possession of a chunk of methamphetamine the size of a "country ham," while another witness recounted how Ventura wanted

the witness "to buy for him and sell for him." J.A. 330, 258. Ventura collected drug debts for Esteban, and several persons owed Esteban large sums for drugs that the Garcias had supplied on credit. On one occasion, Esteban went to Ventura's home and handed him a "wad of money." J.A. 463. Taken together, these facts were sufficient for a jury to conclude that Esteban and Ventura were involved in a single conspiracy involving the distribution of drugs. The evidence, while perhaps not as direct, was also sufficient to establish that Robert Sisk was a part of the same (single) drug conspiracy. At least six witnesses purchased methamphetamine from Sisk. Robert Moore heard Sisk acknowledge that he was getting his drugs from "the Mexicans" "at the video store." Sisk told another witness that he was getting his drugs from the "Mexicans," specifically mentioning "Chili," who was Ventura Garcia. Based on this evidence, a jury could reasonably conclude that the Garcias and Sisk were sufficiently linked "by their mutual interest in [supplying] . . . a particular drug consumption market" to be a part of the same drug conspiracy. *See Burgos*, 94 F.3d at 858.

## C.

The defendants raise two further issues related to their convictions. First, the defendants claim that they were improperly joined for trial. Ordinarily, "defendants who have been charged in the same conspiracy indictment should be tried together. The party moving for severance must establish that prejudice would result from a joint trial, not merely that separate trials would result in a better chance of acquittal." *United States v. Brooks*, 957 F.2d 1138, 1145 (4th Cir. 1992). The defendants claim that they should not have been tried together because "the Government joined multiple alleged drug conspiracies in a one conspiracy count and argued that a single connection among the defendants was sufficient to make this one conspiracy." Appellants' Br. at 45. However, as we just concluded, there was sufficient evidence for a jury to find that the defendants were involved in a single conspiracy. This means that their claim of improper joinder is meritless.

Second, the defendants claim that the district court improperly required the jury to consider whether a conspiracy existed before it considered the drug quantity element of the conspiracy charge. We do

not believe that the instruction, considered as a whole, delinked the drug quantity issue from the conspiracy issue. We review jury instructions to insure that they "fairly state the controlling law." *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990). Reversal is required "only if the error [in instruction] is determined to have been prejudicial, based on review of the record as a whole." *Sturges v. Matthews*, 53 F.3d 659, 661 (4th Cir. 1995).

The district court initially instructed the jury that drug quantity was an essential element of the conspiracy charge that must be established beyond a reasonable doubt. The verdict form, however, indicated that the jury should consider the question of drug quantity only after it concluded that a conspiracy had been established. After jury deliberations began, the jury asked the district court to reiterate the essential elements of the crime. In response the court listed the elements of the conspiracy charge, noting that drug quantity was an element of the crime that must be proved beyond a reasonable doubt. The court continued, "you must find also — beyond a reasonable doubt — that the conspiracy involved at least five kilograms of cocaine [and] . . . at least fifty grams of methamphetamine." J.A. 614.

The defendants claim that the verdict form, by directing the jury to consider drug quantity only after it had determined whether a conspiracy existed, "totally relieved the jury of considering quantity as an element of the offense." Appellants' Br. at 30. We disagree. On every occasion when the district court instructed the jury, it made clear that the government was required to prove drug quantity beyond a reasonable doubt. Although the verdict form directed the jury to determine whether a conspiracy existed before reaching the question of drug quantity, the form did not relieve the jury of finding drug quantity beyond a reasonable doubt. In essence, then, the verdict form simply led the jury to consider certain elements of the charged offense before considering drug quantity. We conclude that there was no prejudicial error in the instructions.

## III.

The defendants raise several challenges to the district court's calculation of their individual sentences. We review a district court's legal interpretation of the Sentencing Guidelines de novo and its factual

findings in sentencing for clear error. *United States v. Daughtrey*, 874 F.2d 213, 217-18 (4th Cir. 1989).

A.

Defendant Sisk argues that the district court committed two errors in computing his sentence. First, Sisk claims that the court improperly calculated the quantity of drugs attributable to him. Second, Sisk claims that, by refusing to grant a downward departure, the court committed reversible error because his criminal history category overstated the seriousness of his prior crimes. We reject each claim.

A district court's "approximation of the amount of drugs is not clearly erroneous if supported by competent evidence in the record." *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). When objecting to drug quantities, "the defendant has an affirmative duty to show that the information [relied on by the court] is inaccurate or unreliable." *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002). At the prosecution's urging, the district court attributed one-and-a-half to five kilograms of methamphetamine to Sisk. This amount was considerably lower than the presentence report's recommendation of "15 kilograms or more of methamphetamine, 25 kilograms or more of cocaine, and a large quantity of marijuana." S.A. 9. There was trial testimony showing that Sisk was responsible for at least one-and-a-half kilograms of methamphetamine, but Sisk argues that the district court should have discounted this testimony because it was "uncorroborated" and imprecise as to actual drug quantity. Appellants' Br. at 34-36. There is no authority for the proposition that testimony establishing drug quantity for sentencing purposes must be corroborated or precise. *See, e.g.*, *United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998) (district court may rely on uncorroborated hearsay in determining drug quantity); *United States v. Uwaeme*, 975 F.2d 1016, 1019 (4th Cir. 1992)(precise calculations of drug quantity not required). Here, the methamphetamine quantity attributed to Sisk by the district court was conservative and was supported by competent evidence in the record.

Sisk also claims that because his criminal history category overstated the seriousness of his prior crimes, the district court erred in rejecting his request for a downward departure. We may review a dis-

trict court's refusal to depart downward "only when the district court was under the mistaken impression that it lacked the authority to depart." *United States v. Carr*, 303 F.3d 539, 545 (4th Cir. 2002)(citations omitted). At the sentencing hearing the district judge specifically stated that "in my discretion, I denied the request for a downward departure in this case." J.A. 653-54. The statement demonstrates that the district court was aware of its authority and was not laboring under any mistaken understanding of the law. Accordingly, we may not review the decision denying Sisk's request for a downward departure.

B.

Ventura Garcia challenges the district court's imposition of a two-level sentence enhancement for possession of a firearm. *See* U.S.S.G. § 2D1.1(b)(1)(2002). When firearms are found in "the proximity of narcotics," a § 2D1.1(b)(1) enhancement is generally warranted. *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997). The enhancement "should be applied [under 2D1.1(b)(1)] if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. Ventura's pre-sentence report stated that "Randy Hodge indicated in statements to agents that [Ventura] carried a derringer type pistol. A .38 caliber Derringer pistol and an Enfield rifle were located at [Ventura's] residence during a search . . . along with methamphetamine and cocaine." J.A. 725.

Ventura argues that the enhancement was improper because the presentence report was based entirely on hearsay. However, "there is no bar to the use of hearsay in sentencing . . . [when] the defendant has had an opportunity to rebut or explain," and Ventura had that opportunity here. *United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998)(citations omitted). Ventura further argues that he should not have received the enhancement because the district court refused to enhance Esteban Garcia's sentence even though officers found firearms at Esteban's home. Ventura overlooks the fact that when officers searched Esteban's home they found firearms but no drugs, indicating that, unlike Ventura's case, Esteban's firearms were not located within the vicinity of drugs. Even assuming for the sake of argument that Esteban should have received an adjustment for firearms posses-

sion, Ventura may not challenge his sentence on that ground. A sentencing enhancement "is mandatory . . . in the event the defendant engaged in conduct that is encompassed by a guideline providing for an enhancement." *United States v. Ashers*, 968 F.2d 411, 414 (4th Cir. 1992). Esteban's sentence does not alter the fact that Ventura engaged in conduct that mandates the firearms enhancement in his own case. Ventura's firearms enhancement is therefore affirmed.

C.

Esteban Garcia challenges the three-level enhancement imposed for his role in the offense. The Guidelines provide for this enhancement when "the defendant was a manager or supervisor and the criminal activity included five or more participants." U.S.S.G. § 3B1.1(b). A district court considers the following factors in deciding whether to apply the enhancement:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4.

Esteban does not argue that the conspiracy involved fewer than five participants. Rather, he argues that he was at most a buyer and a seller of illegal drugs, not a manager or supervisor. The evidence established that Esteban owned CNS Video, which was the hub of a drug distribution ring. On one occasion at CNS Video, Antonio Garcia fronted two ounces of methamphetamine to an undercover agent. When the agent returned to the store to pay for the drugs, he found Esteban but not Antonio. Esteban told the agent that the debt could be paid to him (Esteban) because "it is [my] stuff anyway." J.A. 489. Esteban said further that Tony had been handling it for him. In addition, Ventura Garcia collected drug debts for Esteban. Finally, Esteban fronted drugs to several coconspirators. Taken together, the evidence established that Esteban controlled the drug distribution

operation. In sum, the evidence was sufficient to support the three-level enhancement for Esteban Garcia's role in the offense.

## IV.

Finally, Esteban Garcia claims that he was denied effective assistance of counsel. In this circuit "a claim of ineffective assistance of counsel should be raised by a habeas corpus motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it conclusively appears from the record that defense counsel did not provide effective representation." *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999) (citations omitted). Because it does not conclusively appear from the record that Esteban was denied the effective assistance of counsel, we leave that issue for any collateral proceedings.

## V.

The defendants' convictions and sentences are affirmed.

*AFFIRMED*