**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4634**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY CLAY AREY,

Defendant - Appellant.

---

**No. 06-4635**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TIMOTHY CLAY AREY,

Defendant - Appellant.

---

**No. 06-4636**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RANDOLPH WILLIAM AREY,

                              Defendant - Appellant.

_____

Appeals from the United States District Court for the Western District of Virginia, at Harrisonburg. Samuel G. Wilson, District Judge. (5:05-cr-00029-sgw; 5:05-cr-00062-sgw)

_____

Submitted: February 19, 2007          Decided: March 8, 2007

_____

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Roy D. Bradley, Madison, Virginia, for Appellant Randolph William Arey; Cheryl V. Higgins, ST. JOHN, BOWLING & LAWRENCE, Charlottesville, Virginia for Appellant Timothy Clay Arey. John L. Brownlee, United States Attorney, Jean B. Hudson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Appellants Timothy Clay Arey and Randolph William Arey (collectively, the "Defendants") seek relief from their convictions and sentences in the Western District of Virginia for drug trafficking, conspiracy, and firearms violations. The Defendants raise three primary contentions on appeal. First, they assert that there was insufficient evidence to prove the prosecution's case in two respects: (a) that the Defendants conspired to possess methamphetamine with intent to distribute, and (b) that they possessed a firearm in furtherance of a drug trafficking crime. Second, they assert that the trial court improperly instructed the jury on the law of conspiracy. Third, they assert that the court violated the Defendants' Sixth Amendment rights by enhancing their guidelines ranges on Count One of the Indictment based on facts not found by the jury. As explained below, we affirm.

I.

On November 17, 2005, a federal grand jury returned a multi-count Superseding Indictment against brothers Timothy and Randolph Arey. Relevant to this appeal, the Indictment charged the Defendants with conspiring to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. § 846 (Count One), charged Timothy with three counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)

3

(Counts Three, Five, and Six), and charged Randolph with two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Counts Nine and Ten). The Defendants pleaded not guilty and were tried by jury in Harrisonburg, Virginia.

During their trial, the Government presented several witnesses who testified to the Defendants' drug trafficking activities.[1] Law enforcement officials testified that agents of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), along with officers from Augusta County, executed a search warrant on October 7, 2004, at Timothy's home. The agents found Timothy with a loaded pistol in his back pocket, a fanny pack containing methamphetamine, and over $400 in cash. In the house, the agents found $7,000 in cash, digital scales, more methamphetamine, twenty-seven firearms, a quantity of ammunition, and a RF detector.[2]

Next, the Government presented testimony from the Arey brothers' main supplier of methamphetamine. Wayne Roadcap testified that he "fronted" large quantities (pounds) of methamphetamine to Timothy and Randolph from 1996 or 1997 until

---

[1]The evidence presented at trial is summarized here in the light most favorable to the Government. See United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

[2]A RF detector is a device that can determine whether a person is wearing a wire transmitter.

4

2001.[3] The Defendants would then sell the drugs and return cash to Roadcap. Roadcap kept records, which were admitted in evidence, showing the amounts of methamphetamine distributed to each brother, the debts they owed, and when the debts were repaid. John Harold, a drug dealer who had worked with Roadcap, testified that the Arey brothers would individually come to Roadcap's house to pick up drugs. He testified that Roadcap confirmed to him that the Arey brothers were selling drugs for Roadcap.

The Government also presented the testimony of several cooperating witnesses who had bought methamphetamine from one or both of the Arey brothers. Louis Goulet testified that he obtained methamphetamine from Timothy, first by paying cash and later by trading construction tools and two guns for drugs. When Timothy told Goulet that he was "laying low," he recommended that Goulet obtain drugs from his brother Randolph, which Goulet did. Goulet testified that he sold some methamphetamine for the Arey brothers, and that on one occasion Randolph was carrying a pistol when Goulet purchased drugs from him. Randolph explained to Goulet that he had the firearm in case he got stopped by the police. Treena Louk testified that she and her husband bought methamphetamine from the Arey brothers and that she had seen Randolph carrying a firearm on such occasions. Jose Monjes testified that he bought and sold

_____

[3]The Arey brothers continued to buy methamphetamine from others after Roadcap was arrested in 2001.

methamphetamine for Timothy. David Taylor testified that he purchased methamphetamine from Timothy. On one occasion, Taylor saw Timothy with a revolver, which he said he kept nearby in case the police showed up.

Kathy Arey, Randolph's ex-wife, testified that Randolph obtained methamphetamine from his brother and from Roadcap. On two occasions, the Arey brothers came to her house to break up larger quantities of methamphetamine for distribution. She also testified that Randolph carried a firearm with him when Roadcap delivered drugs to the house. Rhonda Arey, Timothy's ex-wife, testified that her husband sold drugs to several people. On one occasion, she saw a device holding a handgun, mounted under the kitchen table, pointed at the front door. Timothy told her the firearm was under the table for use in the event that a business deal went wrong.[4] After their arrests, both brothers admitted to ATF agents that they had sold methamphetamine. Timothy also admitted that several persons were selling drugs for him.

Both Defendants testified at trial, and both claimed that they only sold small amounts of methamphetamine to support their personal habits. The Defendants admitted to speaking with AFT agents, but they denied being part of a conspiracy and denied selling large quantities (pounds) of methamphetamine over a six-

---

[4]Timothy also threatened to use this device, i.e. the handgun mounted under the kitchen table, on his ex-wife.

6

year period.   Both Defendants also admitted to collecting or carrying firearms, but denied using them as part of a drug trafficking operation.

Prior to the jury deliberations, the trial court instructed the jury on the applicable legal principles.   On appeal, the Defendants challenge the instruction relating to the law of conspiracy, but they failed to object to this instruction at trial. The jury convicted both Defendants on all counts, and they were sentenced on June 1, 2006.  During their sentencing hearings, the court, over the Defendants' objections, first found that each Arey brother was responsible for handling nine kilograms of methamphetamine over a six-year period.[5]   Based on this finding, each brother's base offense level was enhanced from 32 to 36.   The court also found that both Defendants had perjured themselves at trial and thus had obstructed justice.   Because of this finding, each Arey brother's base offense level was enhanced an additional two levels, for a total base offense level of 38.    After calculating the guidelines range and considering the 18 U.S.C. § 3553(a) factors, the court imposed a sentence totaling 535 months for Randolph, which included a sentence of 235 months on Count One. Timothy was sentenced to a total of 952 months in prison, which included a sentence of 292 months on Count One.

---

[5]The jury had found that the Count One conspiracy was responsible for at least 500 grams of methamphetamine.

The Defendants have timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

First, in evaluating whether a jury verdict is supported by sufficient evidence, we must sustain the verdict, "'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). Second, we review for plain error an issue raised first on appeal and not properly preserved in the district court. See United States v. Olano, 507 U.S. 725, 736 (1993). Third, we review a sentence to determine whether it is within the statutorily prescribed range and if it is reasonable. See United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006).

III.

The Defendants raise three primary contentions on appeal.[6] First, they assert that there was insufficient evidence for the jury to conclude (a) that they conspired to possess methamphetamine with intent to distribute, and (b) that they possessed firearms in furtherance of a drug trafficking crime. Second, they assert that the trial court improperly instructed the jury on the law of conspiracy. Third, they assert that the court erred in enhancing their sentences on Count One on the basis of facts not found by the jury. We address these contentions in turn.

A.

1.

The Defendants contend that the verdict on Count One was not supported by sufficient evidence to prove a drug conspiracy because the Government did not establish that a business agreement existed

---

[6]The Defendants make two other contentions on appeal that we summarily reject based on controlling precedent. First, they assert that they cannot be convicted for more than one violation of 18 U.S.C. § 924(c) arising out of the same predicate drug trafficking crime. This assertion has previously been rejected by us. See United States v. Camps, 32 F.3d 102, 107 (4th Cir. 1994) (concluding that Government can obtain convictions for more than one violation of § 924(c) that arise out of same predicate crime). Second, the Defendants assert that Congress violated the Constitution in its regulation of substances whose use did not affect interstate commerce. This assertion has been heretofore raised before and rejected by the Supreme Court. See Gonzales v. Raich, 545 U.S. 1, 9 (2005) (concluding that it is valid exercise of Congress's power to regulate, through Controlled Substance Act, local cultivation and use of marijuana).

between the brothers relating to the distribution of drugs.[7] To secure a conviction on a charge of conspiracy to possess methamphetamine with intent to distribute, the Government must first prove that an agreement existed among the alleged co-conspirators to possess and distribute methamphetamine. See United States v. Wilson, 135 F.3d 291, 306 (4th Cir. 1998). Because there is sometimes a lack of direct evidence of an agreement among co-conspirators, a conspiracy drug offense must often be proven by circumstantial evidence. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc). We have recognized that, in such situations, "[c]ircumstantial evidence . . . may consist of a defendant's relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy." Id. at 858. (internal quotation marks omitted).

Viewing the evidence in this case in the light most favorable to the Government, there is more than ample evidence to establish the Count One conspiracy charge. Indeed, the Government presented overwhelming evidence that the Arey brothers worked together and with others to purchase, package, and sell large quantities of

_____

[7]On appeal, the Defendants focus on whether there was sufficient evidence to determine if a conspiracy to possess methamphetamine with intent to distribute existed between the two brothers only. They ignore the fact that there was evidence establishing they were involved with other alleged co-conspirators, as charged in Count One of the Indictment.

methamphetamine.  Both Roadcap and Harold testified that the Arey brothers had purchased illicit drugs from Roadcap and sold those drugs for him.  Several other witnesses testified that they bought illicit drugs from the Arey brothers and, on occasion, sold drugs for them.  Although there was no formal or written agreement between the alleged co-conspirators, none was necessary, and the Government presented the jury with more than enough evidence for it to reasonably conclude that each Arey brother was involved in the Count One conspiracy, with others and with each other, to buy and sell methamphetamine.

2.

The Defendants next contend that the jury verdict was not supported by sufficient evidence to prove that they possessed firearms "in furtherance of" a drug trafficking crime, as alleged in Counts Three, Five, Six, Nine, and Ten.  To obtain convictions on these charges, the Government was obliged to "present evidence indicating that [a defendant's] possession of a firearm furthered, advanced, or helped forward a drug trafficking crime."  United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).  We have recognized that there are numerous ways that firearms might further drug trafficking crimes, including, inter alia, lessening the chance someone might steal the drugs or the profits derived from the drug transactions, and preventing drug transactions from turning sour.  Id.

11

Viewing the evidence in the light most favorable to the Government, we must readily conclude that sufficient evidence was presented at trial on the "in furtherance of" a drug trafficking crime element of these five counts.  The Government presented several witnesses who testified that Randolph and Timothy often carried firearms with them when they were dealing drugs.  These witnesses testified that each Arey brother explained that they carried weapons for use in the event their drug deals went wrong, or in case the police showed up.  Given this evidence, a reasonable jury was entitled to conclude that the Arey brothers used firearms in furtherance of their drug trafficking activities.

B.

The Defendants next contend that the court did not properly instruct the jurors on the conspiracy charge alleged in Count One. Specifically, the Defendants assert that the court did not properly advise the jury that the Defendants must have reached an agreement between themselves or with other alleged co-conspirators in order to be convicted of conspiracy to possess methamphetamine with the intent to distribute.  Because the Defendants failed to object to the instruction being complained of, we review this contention for plain error.  In order to show plain error, "we must be able to (1) identify an error, (2) which is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness,

12

integrity or public reputation of judicial proceedings." United States v. Ryan-Webster, 353 F.3d 353, 363 (4th Cir. 2003) (internal quotation marks omitted).

When a defendant asserts on appeal that a jury instruction was improper and unduly prejudicial, we must examine "whether, taken as a whole, the instruction fairly states the controlling law." United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990). Here, the court, after correctly outlining the elements of an unlawful conspiracy to the jury, went into a detailed explanation on the controlling legal principles with regard to the charge in Count One.[8] Because the court fairly advised the jury on the controlling

---

[8]In relevant part, the court advised the jury on the following legal principles with respect to Count One:

The agreement or understanding need not be an express or formal agreement or be in writing or cover all of the details of how it is to be carried out. Nor is it necessary that the members have directly stated between themselves the details or purposes of the scheme.

. . . But a person may join in an agreement or understanding, as required by this element, without knowing all the details of the agreement or understanding and without knowing who all the members are.

. . . .

In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from the circumstances and conduct of all the alleged participants.

J.A. 612-14. (Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.)

legal principles on the conspiracy issue, there was no error in this regard, and thus our plain error analysis need proceed no further.

C.

Lastly, the Defendants contend that their sentences were imposed in violation of the Sixth Amendment, because the court made findings of fact that increased their guidelines ranges on Count One beyond what they would have been on the basis of the jury verdict alone. As a result of the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), a sentencing court cannot engage in judicial factfinding that results in a sentence that exceeds the statutory maximum authorized by the jury verdict alone. However, it is not a Sixth Amendment violation for a sentencing court to make the findings of fact necessary to properly calculate a defendant's advisory guidelines range. See United States v. Moreland, 437 F.3d 424, 432 (4th Cir. 2006).

In this case, the sentencing court properly enhanced the Defendants' guidelines ranges on Count One based on its findings that they had committed perjury at trial, and that they were each responsible for handling nine kilograms of methamphetamine over a six-year period. Timothy was then sentenced to 292 months in prison on Count One while Randolph was sentenced to 240 months. Count One — which charged the Arey brothers with being involved in

14

a conspiracy to distribute 500 grams or more of methamphetamine — carries a statutory sentencing range of ten years to life. <u>See</u> 21 U.S.C. § 841(b)(1)(A). Because the Defendants' sentences were each below the statutory maximum of life in prison, no Sixth Amendment violations occurred here. As a result, this contention of the Defendants must also be rejected.

IV.

Pursuant to the foregoing, we reject each of the Defendants' appellate contentions and affirm their convictions and sentences in the district court.[9]

<u>AFFIRMED</u>

---

[9]We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid in the decisional process.

15