**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 05-4775**

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL J. KELLY, SR.,

Defendant - Appellant.

───────────────

**No. 06-1421**

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

M-K SPECIALTIES, Model M-14 Machinegun Serial
Numbers: 1447797, 21954, 1082375, 1394870,
539240, 680531, 1506762, 1335989, 1359769,
1020490, 49488, 1157650, 1181446, 1325123,
1392697, 1434500, 1478082, 1497879, 1560920,
1573826, 217140, 223003, 26268, 336512,
376163, 39524, 419875, 48678, 5175, 575495,
828590, 947264, 977294, 1331982,

Defendant,

and

MICHAEL J. KELLY, SR.; WILLIAM A. THOMAS; GARY
K. BEACH; ALLEN FEHLINGS; CECIL P. SMITH, JR.;
EUGENE GZSANKA; DONALD P. SASS,

                                    Claimants - Appellants,

        and

ANTHONY J. FABIAN; FRANK BLISS; MATHEW C.
HEALEY; RICHARD J. VIEIRA,

                                    Claimants.

─────────────

Appeals from the United States District Court for the Northern
District of West Virginia, at Clarksburg.  Irene M. Keeley, Chief
District Judge.  (CR-03-50; 1:04-cv-00041-IMK)

─────────────

Submitted:  August 2, 2007          Decided:  August 14, 2007

─────────────

Before WILLIAMS, Chief Judge, and MICHAEL and GREGORY, Circuit
Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Richard E. Gardiner, Fairfax, Virginia, for Appellants.  Rita R.
Valdrini, Acting United States Attorney, Randolph J. Bernard,
Robert H. McWilliams, Jr., Michael D. Stein, Assistant United
States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling,
West Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Michael J. Kelly, Sr., a federally licensed firearms dealer, was arrested after agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) seized numerous illegal weapons from his residence and place of business, MKS Specialties, Inc. (MKS). He was convicted for five violations of federal law involving the transfer of firearms to a non-resident, the possession of unregistered machineguns, and the possession of semi-automatic assault weapons. The district court also ordered twenty-eight firearms, possessed or transferred by MKS, forfeited to the government. Kelly appeals his convictions, and he and six other claimants appeal the forfeiture order. Finding no error, we affirm the convictions and forfeiture order.

I.

Kelly owns the MKS gun dealership, located in Grafton, West Virginia. At MKS, Kelly specializes in manufacturing and distributing the MKS M-14A, a gun that he manufactures using receivers from decommissioned M-14 machineguns. (The military decommissions M-14 machineguns by torch-cutting the receiver, the frame of the gun that contains the firing mechanism, into two parts.) In June 2001 agents from the BATFE informed Kelly that the M-14 receivers he was using to manufacture the MKS M-14A were machineguns as defined in 26 U.S.C. § 5845(b). (The Firearm

3

Owners' Protection Act makes it a crime to possess a machinegun that was not lawfully possessed before the Act went into effect on May 19, 1986. See 18 U.S.C. § 922(o).) The BATFE served a cease and desist letter on Kelly, but he continued to manufacture and sell M-14 receivers and MKS M-14As.

On July 24, 2002, the BATFE executed a search warrant on Kelly's residence, which also served as his place of business. The search warrant authorized the agents to seize "[a]ll MKS M-14 receivers and all MKS M14A1 receivers and/or firearms utilizing the aforementioned receivers." S.J.A. 41. In addition to the guns listed in the warrant, the agents discovered an Uzi machinegun receiver, a Maadi semi-automatic assault rifle, an FAL semi-automatic assault rifle, and an AK-47 machinegun. The agents took the guns to BATFE agent Richard Vasquez, who was on the premises during the search, for identification. Agent Vasquez, an expert gunsmith, immediately determined that the firearms were illegal and instructed his fellow agents to seize the guns.

Kelly was indicted for 206 violations of federal law. He filed a motion to dismiss and a motion to suppress the four guns that were not listed in the search warrant. The district court denied both motions. Kelly was convicted after a jury trial on six counts: Counts 95-97 (unlawful transfer of firearms to a non-resident in violation of 18 U.S.C. § 922(b)(3)); Counts 98-99 (unlawful possession of machineguns in violation of 26 U.S.C.

4

§ 5861(d)); and Count 205 (unlawful possession of semi-automatic assault weapons in violation of 18 U.S.C. § 922(v)(1)). The district court granted Kelly's motion for acquittal on Count 99 and denied his other post-trial motions. The court sentenced Kelly to 24 months' imprisonment on each of the five counts to run concurrently. Kelly appeals his convictions.

The government also filed a civil forfeiture action for thirty-four MKS-M14A receivers that the BATFE recovered from seventeen individuals throughout the United States. Eleven individuals, including Kelly, filed claims to the seized guns in the district court. The government alleged that the MKS M-14A firearms were unlawful machineguns and requested that they be forfeited to the government pursuant to 26 U.S.C. § 5872(a). The district court granted the government's motion for summary judgment and ordered the guns forfeited. Kelly and six other claimants appeal the forfeiture order, and this appeal has been consolidated with Kelly's appeal of his conviction.

## II.

Kelly challenges his convictions on the five counts that survived post-trial motions. First, he argues that his convictions for Counts 98 and 205 should be vacated because the Uzi receiver and two semi-automatic assault weapons were unlawfully seized from his residence. Second, he argues that 18 U.S.C. § 922(v), the ban

5

on semi-automatic assault weapons, exceeds Congress's power under the Commerce Clause and violates his Second Amendment right to bear arms. Third, he argues that the convictions on Counts 95-97 should be reversed because (a) the district court erred in instructing the jury, (b) there was insufficient evidence to support the convictions, and (c) the government's expert witness testimony was unreliable. We consider these arguments in turn.

A.

Kelly argues that the district court erred in denying his motion to suppress the Uzi receiver (Count 98) and the two semi-automatic assault weapons (Count 205). Specifically, he says that the district court erred in holding that these weapons, which were not identified in the search warrant, were lawfully seized under the plain view exception to the warrant requirement.

Under the plain view doctrine law enforcement officers may seize an object without a warrant if (1) the officers are "lawfully in a position from which they view an object," (2) the object's incriminating character is "immediately apparent," and (3) the officers have a "lawful right of access to the object." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). Kelly argues that the plain view doctrine cannot justify the seizure because "it was [not] 'immediately apparent' to the agents who brought the

6

three firearms to [agent] Vasquez that there was anything 'incriminating' about the three firearms." Appellant's Br. at 15.

We have previously rejected the argument that an item's illegality must be apparent to the searching officer at the precise moment that he spots it. See United States v. Jackson, 131 F.3d 1105 (4th Cir. 1997) (upholding seizure of drug paraphernalia even though seizing officer did not recognize the paraphernalia's illegality until after he left the room where it was located). The "immediately apparent" prong of the plain view doctrine only requires that "the incriminating nature of the item . . . become apparent, in the course of the search, without the benefit of information from any unlawful search or seizure." United States v. Garces, 133 F.3d 70, 75 (D.C. Cir. 1998).

The BATFE agents did not unlawfully search or seize the three weapons prior to the time Vasquez determined that they were possessed unlawfully. The agents' decision to take the guns to Vasquez, who was located on the premises, was clearly "[]related to the objectives of the authorized intrusion" and therefore not an additional or unlawful search. Arizona v. Hicks, 480 U.S. 321, 325 (1987). Nor did this movement of the guns constitute an unlawful seizure because the agents did not "meaningfully interfere" with Kelly's possessory interest in the guns. Id. at 324; cf. Garces, 133 F.3d at 74 ("[W]e find neither search nor seizure in [the agents'] carrying the key about the house to determine its

7

evidentiary value."); <u>United States v. Menon</u>, 24 F.3d 550, 560 (3d Cir. 1994) (stating that agent executing a search warrant did not seize documents when she moved them to another room for a fellow officer to inspect). Thus, we conclude that the agents' seizure of the three guns was lawful pursuant to the plain view doctrine.

B.

1.

Kelly argues that Congress exceeded its Commerce Clause powers in enacting 18 U.S.C. § 922(v)(1), which prohibits the possession of most semi-automatic assault weapons. Kelly argues that Congress does not have the power to regulate what he describes as intrastate, non-economic activity. This argument is meritless. The Commerce Clause authorizes Congress to regulate "those activities that substantially affect interstate commerce." <u>United States v. Lopez</u>, 514 U.S. 549, 559 (1995). The ban on the possession of semi-automatic assault weapons was plainly intended to reduce the flow of those weapons in interstate commerce. <u>See</u> <u>Navegar, Inc. v. United States</u>, 192 F.3d 1050, 1058 (D.C. Cir. 1999). As the D.C. Circuit has noted, section 922(v) affects commerce by "impos[ing] criminal liability for those activities which fuel the supply and demand for such weapons." <u>Id.</u> Regulations of intrastate activities that affect the supply or demand of a commodity are well within Congress's Commerce Clause

8

powers.  See Wickard v. Filburn, 317 U.S. 111, 128 (1942) (holding that Congress had the power to regulate intrastate cultivation of wheat because of its effect on the national market for that commodity).

2.

Kelly also argues that the ban on semi-automatic assault weapons in section 922(v) violates his Second Amendment right to bear arms.  The Second Amendment states that:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  We held in Love v. Pepersack, 47 F.3d 120 (4th Cir. 1995), that the Second Amendment does not confer an absolute individual right to bear firearms.  In that case we adopted the collective rights theory, interpreting the Amendment to protect the states' right to organize and arm militias.  Accordingly, a person challenging a federal gun restriction must show that his possession of the gun "bore a 'reasonable relationship to the preservation or efficiency of a well regulated militia.'"  Id. at 124 (quoting United States v. Miller, 307 U.S. 174, 178 (1939)).  Kelly has not made any showing that he possessed the semi-automatic assault weapons in connection with membership in a state militia.

Kelly raises several challenges to his convictions under Counts 95-97 for transferring firearms to an out-of-state resident in violation of 18 U.S.C. § 922(b)(3).

1.

Kelly argues that the district court failed to instruct the jury on Counts 95-97 that the government was required to prove that he knew the transferee was not a federally licensed firearms dealer. Section 922(b)(3) makes it unlawful for a licensed dealer to "sell or deliver . . . any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located." 18 U.S.C. § 922(b)(3). This section does "not apply to transactions between licensed . . . dealers." Id. § 922(b).

The district court's instruction "taken as a whole . . . fairly states the controlling law." See United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990) (stating standard of review for challenges to jury instructions). The court told the jury that to convict Kelly on Counts 95-97 it must find that (1) he "knowingly and willfully sold or delivered firearms to persons who the defendant knew . . . did not reside in West Virginia," and (2) "the person to whom the firearm was transferred was not a licensed . . . dealer." J.A. 164. The district court correctly instructed the jury that the willfulness (and knowledge) requirement in section

10

922(b)(3) applies to each of the elements of that offense, specifically (1) the sale of a firearm (2) to an out-of-state resident. The willfulness (and knowledge) requirement does not apply to the "dealer to dealer" provision in section 922(b), which is an exception to the statute's application and not an element of the offense. Accordingly, there was no error in the instruction because the government was not required to prove that Kelly knew that the transferee was not a federally licensed firearms dealer.

2.

Kelly's other challenges to his conviction on Counts 95-97 are meritless. After reviewing the record, we conclude that the convictions on these counts were supported by sufficient evidence. Furthermore, we conclude that the district court did not abuse its discretion in admitting agent Vasquez's expert testimony that the M-14 receivers seized from Kelly's residence could "readily be converted" to fire ammunition. See 18 U.S.C. § 921(a)(3) (stating the definition of "firearm").[*]

---

[*]We also affirm the district court's order denying Kelly's motion for attorney's fees with respect to Counts 1-84 and 127-204 because the government's prosecution on these counts was not "vexatious, frivolous, or in bad faith." In re 1997 Grand Jury, 215 F.3d 430, 436 n.8 (4th Cir. 2000). Significantly, the BATFE informed Kelly that it considered the receivers in his possession to be machineguns well before the government initiated criminal proceedings against him.

11

We next consider the appeal filed by Kelly and six other claimants (collectively, "Kelly") of the district court's order granting summary judgment to the government on its in rem forfeiture claim. The central question is whether the MKS M-14A guns seized by the BATFE agents are "machineguns" as defined in 26 U.S.C. § 5845(b). According to the definition, "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." In this civil forfeiture action the government has the initial burden to establish probable cause to believe that the seized items were unlawful machineguns. The burden then shifts to the claimants to show by a preponderance of the evidence that the guns were improperly seized. See United States v. One TRW, Model M14, 7.62 Caliber Rifle, 441 F.3d 416, 419 (6th Cir. 2006).

It is undisputed that the defendant MKS M-14As could not shoot automatically at the time of their seizure. In support of its motion for summary judgment the government introduced a videotaped deposition in which BATFE agent Vasquez made the MKS M-14A shoot automatically in approximately fifty minutes. (The parties stipulated that the MKS M-14A used in the deposition was representative of the defendant firearms.) Vasquez used three common tools to modify the weapon, including a Dremmel drill, a

carbide burr, and a Tig welder.  He also testified that the spare parts used to restore the weapon could be purchased for approximately $79.00.

Agent Vasquez's restoration of the MKS M-14A established probable cause to believe that the receivers were machineguns. Indeed, two other circuit courts have held that the MKS M-14As sold by Kelly were machineguns under the definition in § 5845(b).  One TRW, 441 F.3d 416; United States v. TRW Rifle 7.62X51MM Caliber, 447 F.3d 686 (9th Cir. 2006).  In both cases the courts determined that the MKS M-14As could be "readily restored," even assuming restoration times that significantly exceeded fifty minutes.  One TRW, 441 F.3d at 423 (four to six hours); TRW Rifle, 447 F.3d at 692 (two hours); see also United States v. Smith, 477 F.2d 399, 400 (8th Cir. 1973) (eight hours).

Kelly argues, however, that "the statute must be applied not based upon the knowledge and skills of an expert and what an expert may be able to accomplish, but upon the knowledge and skills of an ordinary person."  Appellant's Br. at 17.  We reject Kelly's argument for two reasons.  First, because semi-automatic weapons are complex instruments, any restoration for automatic firing will necessarily require some degree of experience or expertise. Accordingly, it makes little sense to inquire whether a gun can be readily restored by the ordinary person.  Second, the level of expertise required to restore the weapon is just one factor that we

13

consider in determining whether a weapon may be readily restored to shoot automatically. In addition to expertise, we consider the time, equipment, and cost necessary to restore the weapon. See One TRW, 441 F.3d at 422 (listing factors); United States v. Aguilar-Espinosa, 57 F. Supp. 2d 1359, 1362 (M.D. Fla. 1999) (same). Thus, a weapon that requires significant expertise to be restored may nevertheless be considered a machinegun if the restoration can be done quickly and with little expense.

In any event, Kelly has not offered evidence to rebut agent Vasquez's expert testimony that the MKS M-14A can be readily restored to fire automatically. Kelly did not show that the restoration process would require significant expertise, specialized tools, or a great expenditure of time and money. Thus, Kelly has not met his burden to prove by a preponderance of the evidence that the receivers were seized unlawfully.

We have also carefully considered Kelly's other arguments for reversal of the summary judgment: (1) that the MKS M-14A receiver was not designed to shoot automatically within the meaning of 26 U.S.C. § 5845(b); (2) that § 5845(b) is unconstitutionally vague; and (3) that no deference is owned to the government in the interpretation of § 5845(b). We conclude that each of these arguments is without merit.

14

For these reasons, we affirm the district court's order granting summary judgment to the government in the forfeiture action.

## IV.

We affirm Kelly's convictions, the district court's order denying Kelly's motion for attorney's fees, and the district court's forfeiture order.

AFFIRMED

15